UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
ARROWOOD INDEMNITY COMPANY, formerly   :          13cv7680 (DLC)
known as ROYAL INDEMNITY COMPANY,      :
                                       :
                     Petitioner,       :          OPINION AND ORDER
                                       :
          -v-                          :
                                       :
EQUITAS INSURANCE LIMITED, CERTAIN     :
UNDERWRITERS AT LLOYD'S OF LONDON,     :
(and Syndicates set forth on Schedule  :
A),                                    :
                     Respondents.      :
                                       :
-------------------------------------- X

APPEARANCES

For petitioner Arrowood Indemnity Company, formerly known as
Royal Indemnity Company:

Robert Lewin
Michele L. Jacobson
Beth K. Clark
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY 10038

For respondents Equitas Insurance Limited, Certain Underwriters
at Lloyd's of London, et al.:

Lloyd A. Gura
Amy J. Kallal
Andrea Fort
MOUND COTTON WOLLAN & GREENGRASS
One New York Plaza
New York, NY 10004

DENISE COTE, District Judge:

     Respondents Equitas Insurance Limited and Certain

Underwriters at Lloyd's of London ("Underwriters") seek relief

from a final judgment pursuant to Federal Rule of Civil
Procedure 60(b)(3), as well as post-judgment discovery, alleging
misconduct by petitioner in procuring an arbitration award
confirmed by this Court in January 2014.  Petitioner Arrowood
Indemnity Company ("Arrowood") opposed these motions on February
6, 2015, and they were fully submitted on February 13, 2015.
For the following reasons, Underwriters' motions are denied.

                              **BACKGROUND**

     Arrowood and Underwriters are both in the business of
insurance, and Underwriters provides "reinsurance" services.
Reinsurance allows insurers to transfer their risk of losses
under a policy or policies to another insurer.  In the 1960s,
Arrowood entered into a reinsurance agreement with Underwriters.
In general terms, this was an "excess of loss" agreement, under
which Underwriters agreed to indemnify Arrowood for losses
pursuant to certain of Arrowood's insurance policies if those
losses exceeded a specific fixed amount, or "retention."

     The parties' agreement was embodied in a complex
contractual reinsurance program called the "Global Slip."
Negotiations for the first iteration of the Global Slip took
place in late 1966, and that contract was effective from January
1, 1967 to December 31, 1968.  It was thereafter replaced by
substantially similar agreements containing new contractual
language.

One provision of the Global Slip covered losses incurred under Arrowood's casualty insurance policies -- that is, insurance policies covering injury -- if those losses exceeded $1 million.  In order to recover casualty insurance, Arrowood had to satisfy contractual terms under one of three types of coverage; of particular relevance here is "Common Cause Coverage," which provides for losses arising from "occurrences" during the term of the contract that are the "probable common cause or causes" of more than one claim.  The Common Cause Coverage provision includes a clause stating, in pertinent part, that "this Contract does not cover any claim or claims arising from a common cause, which are not first advised during the period of this Contract" (the "First Advised Clause").

In the 1980s, Arrowood began incurring liabilities as a result of asbestos injury claims submitted by its policyholders. At Underwriters' insistence, it billed its claims to Underwriters on an individual and per-year basis, which imposed a $1 million retention for its total recovery per year.  In 2008, after almost 25 years of this billing practice, and after its review of the contractual language at issue, Arrowood presented a number of its asbestos claims to Underwriters under the Common Cause Coverage provision.  Underwriters contended that the First Advised Clause required any Common Cause claims to be noticed during the original contract period, namely the

years 1967 and 1968.  They denied Arrowood's claim.

The parties commenced arbitration in October 2010, presided over by a three-arbitrator panel (the "Panel").  Underwriters presented numerous arguments, including that a different binding agreement existed between Arrowood and Underwriters, that certain coverage was limited to employer liability claims, and that the First Advised Clause precluded recovery under the Common Cause Coverage.  Arrowood argued that the First Advised Clause was intended only to prevent recovery on known losses whose "common cause" occurred before the term of the original contract.  Extensive discovery and document production followed; Arrowood produced over 300,000 pages of documents, including contemporaneous evidence of the parties' understanding of the First Advised Clause during contract negotiations.  Arrowood did, however, object to the production of documents relating to "other reinsurers" and "other claims," and accordingly did not produce them.[1]  Among other things, Arrowood stated that "there [was] not a single fact to support" Underwriters' interpretation of the First Advised Clause.

Arbitration proceedings took place in New York City in March and April of 2013.  During the eight-day hearing, numerous

---

[1] Underwriters chose not to move to compel these categories of evidence.  When the parties did move to compel other documents related to third parties, the Panel denied such motions.

exhibits were presented and numerous witnesses testified to the meaning of the First Advised Clause.  In its decision of April 4, 2013, the Panel agreed that Arrowood's interpretation was more reasonable, setting forth its reasoning in some detail and observing that Underwriters "presented no evidence" by which the Panel might conclude otherwise.  It rejected all of Underwriters' other arguments with respect to the asbestos claims and accordingly awarded Arrowood $44,808,973.  On October 30, 2013, Arrowood sought confirmation of its award in the Southern District of New York.  The parties subsequently notified the Court that they had entered a stipulation by which Underwriters would not oppose the confirmation.  The judgment issued on January 21, 2014 and the case was closed.

Months later, Underwriters began communicating with other reinsurers who were party to the Global Slip and who had prevailed in their arbitration proceedings against Arrowood.  On December 19, 2014, Underwriters obtained a document, produced by Arrowood in a different action, that allegedly puts the lie to Arrowood's argument in theirs.  According to Underwriters, this document -- a letter created by a reinsurance broker in 1987 (the "Letter") -- "sets out in unequivocal terms the very same interpretation of the First Advised Clause that Underwriters propounded to the arbitration panel."  The Letter was written to a third-party reinsurer and was written to assist in a

contemporaneous 1987 claim, not one of those at issue in the instant arbitration.  It described in some detail the broker's then-understanding of the reasons for and history of the First Advised Clause.

Underwriters consider the Letter responsive to Underwriters' discovery request for documents concerning Common Cause Coverage and the First Advised Clause.  On December 29, they sent a letter to Arrowood expressing concern that the Letter had not been produced during arbitration and requesting immediate access, under the Global Slip's audit clause, to all documents related to Common Cause Coverage and the First Advised Clause.  In reply, Arrowood explained that it considered the Letter -- written to a third party pursuant to a claim not at issue in the arbitration -- one of the documents Arrowood had objected to producing, and furthermore that it opposed Underwriters' request to an audit as overbroad.  Underwriters filed this motion on January 20, 2015.

## DISCUSSION

The Federal Rules of Civil Procedure provide a mechanism for seeking relief from a judgment procured by fraud.  Rule 60(b)(3) provides that a court "may relieve a party or its legal representative from a final judgment" in cases of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party."  "[A]

Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits." Fleming v. N.Y. Univ., 865 F.2d 478, 484 (2d Cir. 1989). Relief under Rule 60(b) is "generally not favored and is properly granted only upon a showing of exceptional circumstances." Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co., 609 F.3d 122, 131 (2d Cir. 2010) (citation omitted).

The judgment at issue here was entered to confirm an arbitration award. Arrowood sought enforcement of the arbitration award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 (the "New York Convention"), as implemented by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201, et seq. The domestic terms of the FAA apply to international awards made in the United States. See Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co., 668 F.3d 60, 71 (2d Cir. 2012). Federal Rule of Civil Procedure 81(a)(6) provides that the Rules "govern proceedings under" the FAA, "except as [it] provide[s] other procedures." "[W]here the FAA's procedures are in conflict with those of the civil rules, the former control[]." ISC Holding AG v. Nobel Biocare Fin. AG, 688 F.3d 98, 114 (2d Cir. 2012).

Section 10 of the FAA provides specific, enumerated grounds upon which an arbitration award may be vacated.  Among the FAA's grounds for vacatur are that "the award was procured by corruption, fraud, or undue means."  9 U.S.C. § 10(a)(1).[2]  The FAA imposes a strict time limit on any motion to vacate. "Notice of a motion to vacate . . . an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered," id. § 12, and "a party may not raise a motion to vacate, modify or correct an arbitration award after the three month period has run."  Wallace v. Buttar, 378 F.3d 182, 197 (2d Cir. 2004) (citation omitted).

Underwriters allege that Arrowood intentionally withheld the Letter during the arbitration proceedings and deliberately made false statements to the Panel.  In so doing, they rightly acknowledge that Rule 60(b)(3) cannot be used to challenge directly the arbitration proceedings or the resultant award. Instead, they argue that Arrowood's alleged misconduct was not confined to the arbitration proceeding, but rather "continued into the judicial proceeding to confirm the award."  This effort to escape the three month limitation imposed by the FAA on

---

[2] Vacatur may be sought pursuant to the New York Convention only under the domestic laws of the country in which the award is made.  Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 23 (2d Cir. 1997).  Here, the award was made in the United States, and that law is the FAA.

motions to vacate an arbitration award fails.  The judicial
proceeding in this case was a summary affair, the judgment
undisputed and stipulated to.  However they choose to
characterize it, the essence of Underwriters' complaint is that
there was misconduct in the arbitration proceedings, not in the
summary proceedings before this Court to obtain a confirmatory
judgment.

The Second Circuit has previously confronted the
interaction between 9 U.S.C. § 10 and the Federal Rules, and has
found Rule 60(b) a procedurally improper means of redressing
alleged wrongs or oversights in arbitration proceedings.  In
1962, the Circuit was asked to vacate a labor arbitration
decision pursuant to Rule 60(b), on the grounds of newly
discovered evidence.[3]  Bridgeport Rolling Mills Co. v. Brown, 314
F.2d 885 (2d Cir. 1963) (per curiam).  According to the court,
the fact that the party seeking to vacate the award "may have
had, or may now have, sufficient evidence to justify [a
different result] is irrelevant to the issues the arbitrator
heard and has no bearing upon the arbitrator's determination."
Id. at 885-86.  It held that "the parties, having agreed to an
arbitration of their differences, are bound by the arbitration

---

[3] The appellant had also cited 9 U.S.C. § 10's provision on fraud
before the district court, but the Circuit largely confined its
decision to the Rule 60 issue.

award made upon the testimony before the arbitrator." Id. at 886.  The Second Circuit has also affirmed a lower court ruling that "[u]nder Rule 81(a)(3) . . . Rule 60(b) is unavailable . . . in contesting the arbitrators' decision." Cook Chocolate Co., a Div. of World's Finest Chocolate v. Salomon Inc., 748 F. Supp. 122, 125 (S.D.N.Y. 1990), aff'd sub nom. Cook Chocolate Co. v. Salomon Inc., 932 F.2d 955 (2d Cir. 1991).[4]

Other Circuits concur.  For example, a Fourth Circuit holding that, because the FAA "contains exclusive procedures for vacating arbitration awards, Rule 60(b)(1) is inapplicable" for that purpose, e.spire Commc'ns, Inc. v. CNS Commc'ns, 39 Fed. App'x. 905, 912 (4th Cir. 2002) (per curiam), has been cited favorably in the Second Circuit.  See ISC Holding, 688 F.3d at 123 (Straub, J., concurring in part and dissenting in part on other grounds).  The D.C. Circuit has observed that there is "substantial cause for not applying Rule 60(b) remedies to final arbitration awards." Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Co., 442 F.2d 1234, 1239 (D.C. Cir.

---

[4] The Second Circuit has repeated, in a footnote, that an underlying district court opinion found that plaintiff "could have sought relief from the federal judgments confirming and enforcing the award in federal court through Fed.R.Civ.P. 60(b)(3)." Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 500 F.3d 111, 118 n.9 (2d Cir. 2007).  As the Court reads it, this observation does not constitute an endorsement of the practice of using Rule 60(b)(3) to revisit the propriety of arbitration awards.

1971); but see Baltia Air Lines, Inc. v. Transaction Mgmt.,
Inc., 98 F.3d 640, 642 (D.C. Cir. 1996) (stating that Rule 60(b)
can be "an appropriate vehicle by which to challenge a judgment
confirming an arbitration award" but not addressing Rule 60(b)'s
interaction with Section 10 of the FAA).

The Ninth Circuit has decided a case with facts
substantially similar to those here.  In Lafarge Conseils Et
Etudes, S.A. v. Kaiser Cement & Gypsum Corp., 791 F.2d 1334 (9th
Cir. 1986), Kaiser Cement filed a Rule 60(b) motion to set aside
a judgment confirming an arbitration award against it a year
after the date of judgment.  Id. at 1339.  Kaiser argued that it
had discovered new evidence, invoking Rule 60(b)(2), and that
certain evidence that was presented was patently the product of
fraud, invoking Rule 60(b)(3).  Id. at 1338-39.  The court
denied the motion, concluding that parties may not "collaterally
attack [an arbitration] award under the guise of a motion to set
aside the judgment confirming the award."  Id. at 1339.  It
reasoned that

> [t]he [F]ederal Arbitration Act provides the exclusive
> grounds for challenging an arbitration award within
> its purview.  Once an arbitrator has rendered a
> decision the award is binding on the parties unless
> they challenge the underlying contract to arbitrate
> pursuant to section 2 or avail themselves of the
> review provisions of sections 10 and 11.  Otherwise,
> the three month notice requirement of section 12 for
> appeal of an award on section 10 or 11 grounds would
> be meaningless if a party to the arbitration
> proceeding could bring an independent action asserting

11

such claims outside of the statutory time period
provided for in section 12.

Id. at 1338-39 (citation omitted).

These decisions and their reasoning are adopted here.  Rule
81 provides that the grounds listed in 9 U.S.C. § 10 -- and,
where applicable, those in the New York Convention -- are the
exclusive means of addressing and redressing wrongdoing in an
arbitration proceeding.  The FAA prescribes a specific period
during which challenges to an arbitration award may be made
based on misconduct or fraud during the arbitration proceedings.
Permitting Rule 60(b)(3) challenges to confirmation judgments on
the theory that alleged misconduct in an arbitration proceeding
"continued" into the judgment proceeding upends the FAA's strong
deference to the process and substance of arbitration as a form
of dispute resolution.[5]  The cases cited by Underwriters in
support of their position are either unpersuasive or not in

---

[5] Underwriters cite a countervailing doctrine.  In Commercial
Union Ins. Co. v. Lines, 378 F.3d 204 (2d Cir. 2004), the Second
Circuit reversed confirmation of an award where "the arbitrators
[had] found fraud" during arbitration.  It held that to confirm
an arbitration award where fraud may have prejudiced a party
might "violate the principle, fundamental in our jurisprudence,
that a wrongdoer shall not be permitted to profit through his
own wrongdoing."  Id. at 208.  That case presented very
different facts.  Underwriters here allege fraud; the tribunal
in Commercial Union found that there was fraud.  More to the
point, Underwriters here rely here on Rule 60(b)(3); Commercial
Union was decided under the FAA.  As explained above, Rule
60(b)(3) cannot be used to pry open a judgment in this manner.

conflict with this reading of the interaction between Rule 60(b)(3) and the FAA.[6]

## CONCLUSION

Underwriters' January 20, 2015 motions for relief pursuant to Rule 60(b)(3) and for post-judgment discovery are denied.

Dated:     New York, New York
           May 14, 2015

_____
                          DENISE COTE
                 United States District Judge

---

[6] For example, Rule 60(b)(6) has been used to correct a mathematical error in a judgment confirming an arbitration award, Clarendon Nat. Ins. Co. v. TIG Reinsurance Co., 183 F.R.D. 112, 117 (S.D.N.Y. 1998), and Rule 60(b)(5) has been used to grant partial relief where some of the judgment had been satisfied.  AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc., 579 F.3d 1268, 1273 (11th Cir. 2009).