UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                        :
ARROWOOD INDEMNITY COMPANY, formerly   :        13cv7680 (DLC)
known as ROYAL INDEMNITY COMPANY,      :
                                         :
                    Petitioner,   :        OPINION AND ORDER
                                         :
        -v-                           :
                                         :
EQUITAS INSURANCE LIMITED, CERTAIN     :
UNDERWRITERS AT LLOYD'S OF LONDON,     :
(and Syndicates set forth on Schedule  :
A),                                    :
                                         :
                    Respondents.  :
                                         :
-------------------------------------- X

APPEARANCES

For petitioner Arrowood Indemnity Company, formerly known as
Royal Indemnity Company:

Robert Lewin
Michele L. Jacobson
Beth K. Clark
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY 10038

For respondents Equitas Insurance Limited, Certain Underwriters
at Lloyd's of London, et al.:

Lloyd A. Gura
Amy J. Kallal
Andrea Fort
MOUND COTTON WOLLAN & GREENGRASS
One New York Plaza
New York, NY 10004

DENISE COTE, District Judge:

    This is the second dispute between petitioner Arrowood

Indemnity Company ("Arrowood") and respondents Equitas Insurance

Limited and Certain Underwriters at Lloyd's of London
("Underwriters") over an arbitration award entered in Arrowood's
favor in 2013 ("Award").  Earlier this year, Underwriters moved
under Federal Rule of Civil Procedure 60(b)(3) to set aside this
Court's January 2014 Order and Judgment ("Award Judgment")
confirming the 2013 Award.  That motion was denied as an
impermissible collateral attack on the Award.  <u>Arrowood Indem.</u>
<u>Co. v. Equitas Ins. Ltd.</u>, No. 13cv7680 (DLC), 2015 WL 2258260,
at *5 (S.D.N.Y. May 14, 2015) ("<u>Rule 60 Opinion</u>").  While that
motion was pending, Underwriters initiated a second arbitration
proceeding regarding the Award and underlying contract ("Second
Arbitration").  Arrowood now seeks to enjoin the Second
Arbitration, to enforce the Award Judgment, and to hold
respondents in contempt of that Judgment.  Underwriters cross-
move for an order compelling arbitration.  For the following
reasons, the Second Arbitration is enjoined.

**BACKGROUND**

     The facts of this case are explained in detail in the <u>Rule</u>
<u>60 Opinion</u>, and only those necessary to resolve the instant
dispute are provided here.  See <u>Rule 60 Opinion</u>, 2015 WL
2258260.  In the 1960s, Arrowood entered into a reinsurance
agreement with Underwriters.  The parties' agreement was
embodied in a complex contractual reinsurance program called the
"Global Slip."

The Global Slip involved three types of coverage.  Of particular relevance here is "Common Cause Coverage," which provides for losses arising from "occurrences" during the term of the contract that are the "probable common cause or causes" of more than one claim.  The Common Cause Coverage provision includes a clause stating, in pertinent part, that "this Contract does not cover any claim or claims arising from a common cause, which are not first advised during the period of this Contract" (the "First Advised Clause").

The Global Slip contains two other provisions important to this litigation.  First, it contains a broad arbitration clause, which states that

> if any dispute shall arise between [Arrowood] and [Underwriters] with reference to the interpretation of this Contract or their rights with respect to any transaction involved, the dispute shall be referred to three arbitrators . . . .  The arbitrators shall consider this contract an honorable engagement rather than merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law.

Second, Article 16 of the Global Slip provides that Underwriters "or their duly accredited representatives shall have free access to the books and records of [Arrowood] at all reasonable times for the purpose of obtaining information concerning this Contract or the subject matter thereof."

In the 1980s, Arrowood began presenting asbestos claims to Underwriters under their interpretation of the First Advised

Clause.  It sought reinsurance contributions for payments that
Arrowood made to its insureds on liability policies for products
that the insureds had placed into the market that contained
asbestos.  Underwriters denied Arrowood's claims on the ground
that its interpretation was wrong, and the parties commenced
arbitration in October 2010, presided over by a three-arbitrator
panel (the "Panel").  Arbitration proceedings took place in New
York City in March and April of 2013 (the "First Arbitration").

During the First Arbitration, the parties agreed that
Common Cause Coverage applied to claims like asbestos claims,
where there is a delay in the manifestation of injury.  They
disagreed, however, as to the interpretation and effect of the
First Advised Clause.  As the Panel observed, the meaning of the
First Advised Clause was ambiguous and at the "heart of the
dispute."  Underwriters took the position that the clause
required that any insurance claims involving latent causes --
such as asbestos claims -- had to be noticed to the insurer
during the contract period.  Arrowood, by contrast, argued that
the clause only barred Common Cause Coverage for claims that had
first been noticed to the insurer prior to the date of the
policy, which was January 1, 1967.

The Panel accepted Arrowood's interpretation, holding that
the time of making a liability claim is irrelevant if the
liability is alleged to have resulted from a common cause such

as an injury caused by exposure to asbestos, except that the
First Advised Clause "excludes coverage for insurance liability
claims that were already made against [the insurer] prior to the
effective date of the" Global Slip, January 1, 1967.  As such,
the clause had "no application to any of the [asbestos] claims
asserted in this arbitration."  The Panel further noted that
Underwriters "presented no evidence from which the [Panel] could
reasonably conclude that any of Arrowood's claims for
reinsurance in this Arbitration are not covered due to the"
First Advised Clause.

On the basis of their interpretation of the First Advised
Clause, on April 4, 2013, the Panel issued an award requiring
Underwriters to pay Arrowood $44,808,973 in principal and
interest (the "Award").  This sum represented outstanding bills
for five reinsurance accounts -- four accounts with Common Cause
claims and one with a claim under a different Global Slip
provision.

The Award further directs Underwriters to pay "any
reinsurance bills submitted by Arrowood after the date of this
Final Award . . . under the 'probable common cause or causes'
provision of the 1967 Global Slip Reinsurance Contacts" on the
four Common Cause accounts.  Paragraph 15 of the Award also
provided that

Underwriters may not withhold, refuse or delay payment

5

of any amounts due under those . . . reinsurance bills
. . . on the grounds that they wish to audit, inspect
and/or review the books and records of Arrowood
related to any one of those claims. . . . [But]
<u>Underwriters may subsequently audit, inspect, and
review the books and records of Arrowood</u> related to
any of these claims, as provided by the contract <u>and
may seek reimbursement from Arrowood of any claim or
claims improperly paid</u>.

(Emphasis supplied.)

On October 30, 2013, Arrowood sought confirmation of the
Award in the Southern District of New York.  The parties
subsequently notified the Court that they had entered a
stipulation by which Underwriters would not oppose the
confirmation.  This Court's Award Judgment issued on January 21,
2014, and the case was closed.  Underwriters satisfied the
Award's initial $44,808,973 obligation and have since paid
Arrowood approximately $17,282,103 in post-Award billings.

Nearly a year later -- on December 19, 2014 -- Underwriters
obtained a document, produced by Arrowood in a different action,
that Underwriters allege was improperly withheld from them in
the First Arbitration.  According to Underwriters, the document
shows that Arrowood's interpretation of the First Advised Clause
was disingenuous and, indeed, that Underwriters' interpretation
is the correct one.  Underwriters maintain that Arrowood
intentionally concealed the document to bolster its position and
that this constituted fraud and misconduct before the Panel.
Arrowood disputes the document's significance and insists that

it was properly withheld pursuant to an objection timely made to Underwriters' discovery requests.

Soon after obtaining the document, Underwriters requested on December 29, 2014, and pursuant to their rights under Article 16 of the Global Slip, to review and audit Arrowood's documents related to the Common Cause provision.  Arrowood objected, requesting that Underwriters first precisely identify the documents they sought to review.  Underwriters renewed their audit request on January 19, 2015, again demanding to "review all documents in Arrowood's possession, custody, or control <u>concerning the interpretation . . . of the common cause language</u>," citing their "broad access-to-records rights under the Global Slip" and "not[ing] that ¶ 15 of the 04 April 2013 Revised Final Award also affords audit rights for improperly paid claims."  (Emphasis added.)  Arrowood replied on January 30, offering to produce a narrower subset of documents specifically relating to the claims paid after the Award.

On January 20, 2015, while awaiting Arrowood's response, Underwriters filed a motion seeking post-judgment discovery and relief from the Award Judgment pursuant to Federal Rule of Civil Procedure 60(b)(3), alleging that Arrowood's misconduct justified setting aside the judgment.  Arrowood opposed the motions, which were fully submitted on February 13.  Those motions were denied on May 14 on the ground that the Federal

Arbitration Act ("FAA") provides the exclusive means of challenging an arbitration award, and that the FAA demands that any challenge to an award based on the assertion that a participant engaged in misconduct or fraud must be brought within three months after the award is filed or delivered.  See Rule 60 Opinion, 2015 WL 2258260, at *3.  The Court held that Rule 60(b)(3) cannot be used to collaterally attack an arbitration award for misconduct in the arbitration in the guise of an attack on the judgment confirming it.  Because it found that Rule 60(b)(3) was an improper vehicle for the claim of misconduct, the Court did not reach the issue of whether misconduct actually occurred during the Arbitration. Underwriters did not appeal from the Rule 60 Opinion.

Soon after it filed the Rule 60(b)(3) action, on February 5, Underwriters formally demanded a Second Arbitration citing two grounds.  First, they demand access to Arrowood's records identified in Underwriters' letters of December 29, 2014, and January 19, 2015.  As described above, those letters requested documents concerning the interpretation of the Common Cause Coverage provision.

Second, the demand asserts that Arrowood

engaged in intentional misconduct in the recent arbitration between the parties as described in Underwriters' Rule 60(b)(3) motion.  Paragraph 15 of the Award directs Underwriters to pay billings submitted by Arrowood after the date of the Award . .

8

. but specifically provides that Underwriters may seek
reimbursement from Arrowood of "any claim or claims
improperly paid."  Underwriters therefore also demand
arbitration to recover all sums paid, including
interest, under ¶ 15 of the Award.

(Emphasis added.)

Thus, both demands for arbitration seek to vacate and
reverse the ruling rendered by the Panel in the First
Arbitration regarding the meaning of the Common Cause Coverage
and the First Advised Clause.  The Underwriters base their
request for the Second Arbitration on the post-arbitration
discovery of the Arrowood document and the Underwriters'
contention that Arrowood fraudulently withheld the document
during the First Arbitration.

The demand also stated that Underwriters "reserve[d] all
rights to modify and/or supplement th[e] demand . . . including
the right to seek declaratory relief."  The claim for
declaratory relief is not specified in the demand.  In their
memorandum in opposition to Arrowood's motion, however,
Underwriters explain that they might "opt to pursue a
declaration in [the Second Arbitration] that (for example) the
Award has no preclusive effect on issues or claims not decided
in the arbitration (e.g. Underwriters' contractual obligation to
pay [for accounts not specifically mentioned in the Award])."

After the Rule 60 Opinion issued, Arrowood sent
Underwriters a letter on May 29 requesting that Underwriters

withdraw their Second Arbitration demand on the grounds that it
is in violation the FAA.  After discussion with Arrowood through
the month of June, Underwriters ultimately refused to withdraw
the arbitration, and Arrowood filed the instant motion on July
6.  It has moved for three things: an order permanently
enjoining the Second Arbitration as barred by the FAA; a
declaration that any action by Underwriters to seek
reimbursement from Arrowood of amounts paid under the Award is a
violation of the Award Judgment; and an order holding
Underwriters in contempt of the Award Judgment.  In opposing
that motion, Underwriters cross-moved to compel arbitration
under the terms of the Award and Award Judgment.  Arrowood's
motion was fully submitted on July 23; Underwriters' was fully
submitted on July 28.

## DISCUSSION

Federal law allows only "narrow judicial review . . . in
arbitration cases."  Oxford Health Plans LLC v. Sutter, 133 S.
Ct. 2064, 2071 (2013) (Alito, J., concurring), and requires
courts to "compel arbitration of . . . disputes that the parties
have agreed to submit" to arbitration.  Cohen v. UBS Fin.
Servs., Inc., --- F.3d ---, 2015 WL 3953348, at *2 (2d Cir. June
30, 2015) (citation omitted).  Furthermore, "[o]nce confirmed,
[arbitration] awards become enforceable court orders, and, when
asked to enforce such orders, a court is entitled to require

actions to achieve compliance with them."  <u>Zeiler v. Deitsch</u>, 500 F.3d 157, 170 (2d Cir. 2007).

Both parties seek orders from the Court pursuant to its authority to compel and enforce arbitration.  Each party's requested relief rests upon its reading of ¶ 15 of the Award, which requires Underwriters to pay any future claims under the Common Cause Coverage provision but also affords a right to "audit, inspect, and review" books and records related to post-Award claim payments and to seek reimbursement of any claims "improperly paid."  On the basis of its reading, Underwriters have demanded arbitration on three issues: the right to reimbursement on the basis of claims "improperly paid"; the right to access and audit records under the Global Slip and the Award; and the right to arbitrate claims for declaratory relief. Each issue is addressed in turn.

**I. Reimbursement Right**

The parties most vigorously dispute the nature of the reimbursement right conferred by ¶ 15 of the Award, and whether Underwriters' attempt to exercise that right amounts to a "collateral attack" on the original Award.  Arrowood argues that the Second Arbitration is such an attack, and an attempt to avoid compliance with the Award Judgment to boot.  Underwriters assert that they seek the Second Arbitration only to enforce their reimbursement rights under the Award and Award Judgment.

"[T]he FAA expresses a national policy favoring arbitration." Citigroup, Inc. v. Abu Dhabi Inv. Auth., 776 F.3d 126, 129 (2d Cir. 2015) (citation omitted); see also Katz v. Cellco P'ship, --- F.3d ---, 2015 WL 4528658, at *3 (2d Cir. July 28, 2015) (noting FAA's "pro-arbitration policy").  Under the FAA, "[t]he role of a district court . . . is narrowly limited and arbitration panel determinations are generally accorded great deference." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 103 (2d Cir. 2013) (citation omitted).  Indeed, the "district court must confirm an arbitration award unless the party seeking vacatur establishes any of the limited exceptions listed in § 10(a) of the FAA." Id. at 104 (emphasis added).  Among the grounds for vacatur provided in § 10 is that "the award was procured by corruption, fraud, or undue means." 9 U.S.C. § 10.

Section 10 provides "the exclusive means of addressing and redressing wrongdoing in an arbitration proceeding." Rule 60 Opinion, 2015 WL 2258260, at *5 (emphasis added).  Any challenges on the grounds listed in § 10 must be raised within three months of the award. See 9 U.S.C. § 12.  The parties do not dispute that failure to challenge an award on the basis of "fraud or undue means" within a three-month window bars future challenges to an award under the FAA.

Although parties are generally free to seek arbitration

12

under a broad arbitration clause, courts may intervene if the "ultimate objective . . . is to rectify the alleged harm" a party suffered from an unfavorable arbitration award "by attempting to arbitrate [its] claims in a separate second arbitration proceeding." Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 205 F.3d 906, 910-11 (6th Cir. 2000); see also Gulf Petro Trading Co., Inc. v. Nigerian Nat. Petroleum Corp., 512 F.3d 742, 750 (5th Cir. 2008) (suit forbidden where the nature of the relief sought "shows that [the] true objective . . . is to rectify the harm [a party] suffered in receiving [an] unfavorable Final Award"). Such arbitral mulligans are forbidden by the FAA, which is "the exclusive remedy for challenging acts that taint an arbitration award[,] whether a party attempts to attack the award through judicial proceedings or through a separate second arbitration." Decker, 205 F.3d at 911; see also Foster v. Turley, 808 F.2d 38, 41-42 (10th Cir. 1986) ("The Arbitration Act provides the exclusive remedy for challenging conduct that taints an arbitration . . . [and when] a suit is in substance no more than a collateral attack on the award itself, it is governed by the provisions of the Act."). Moreover, as a "necessary corollary" to its enforcement power, a district court has the authority to construe arbitration awards. Cajun Elec. Power Co-op., Inc. v. Riley Stoker Corp., 901 F.2d 441, 445-46 (5th Cir. 1990); see also San Francisco Elec.

Contractors Ass'n, Inc. v. Int'l Bhd. of Elec. Workers, Local
No. 6, 577 F.2d 529, 534 (9th Cir. 1978).

In their demand to recover all sums paid to Arrowood
pursuant to ¶ 15 of the Award, Underwriters seek to avoid the
time limitation imposed by the FAA for challenging an award
procured "by corruption, fraud, or undue means."  9 U.S.C.
10(a)(1).  Their demand for reimbursement is explicitly premised
on their assertion that Arrowood "engaged in intentional
misconduct in the recent arbitration . . . as described in
Underwriters' Rule 60(b)(3) motion."  Underwriters want to
recoup the post-Award billings that ¶ 15 of the Award requires
them to pay by arguing that the Panel erred in its
interpretation of the Common Cause Coverage provision due to
Arrowood wrongfully, and "improperly," withholding relevant
documents during the First Arbitration.  Because Underwriters'
demand for a Second Arbitration to recover sums paid under ¶ 15
of the Award is in direct contravention of the FAA, it must be
enjoined.

Underwriters do not deny that they seek through the Second
Arbitration to revisit the Panel's interpretation in the First
Arbitration of the Common Cause Coverage provision.  They argue
instead that such an effort is permitted by the Award.
According to Underwriters, because ¶ 15 of the Award permits
them to arbitrate whether any sums have been "improperly paid"

14

to Arrowood, they may ask the Second Arbitration panel to rule once again on the proper interpretation of the First Advised Clause in the Common Cause Coverage provision and bar reinsurance for asbestos claims that were made to insurers after the contract period.  This they may not do.  It is true that ¶ 15 of the Award permits Underwriters to inspect books and records of Arrowood to investigate -- post-payment -- whether a claim was properly paid, and to seek reimbursement on that basis.  That right of reimbursement, however, is not a loophole that allows another arbitration panel to revisit and potentially alter the interpretation of a critical policy term that was at the heart of the Panel's work and decision in the First Arbitration.

Indeed, accepting Underwriters' argument -- that the term "improper" encompasses Arrowood's alleged misconduct during the course of the First Arbitration -- would eviscerate ¶ 15.  By alleging "improper" conduct by Arrowood during the First Arbitration, Underwriters seek to obtain an arbitral decree that all post-Award payments that ¶ 15 requires them to make must be reimbursed under ¶ 15.

Under these circumstances, the Second Arbitration demand to recover sums already paid amounts to a collateral attack on the merits of the Award.  In practical effect, Underwriters seek to vacate the Award on the ground that it was wrong to impose the ¶

15 obligation in the first place.  In the same way that a Rule
60(b)(3) motion cannot be used to bring an untimely challenge to
an arbitral award on a ground enumerated in the FAA, the FAA
does not permit a second arbitration demand to be used to
nullify an arbitral award, in whole or in part, on the same
untimely ground.

## II. Arbitration Regarding Access-to-Records Provision

The parties also dispute whether the access-to-records
clause in the Global Slip and the parallel provision in ¶ 15 of
the Award permit Underwriters to review all documents concerning
the interpretation of the Common Cause Coverage provision.  For
similar reasons to those just described, Underwriters' demand
for a Second Arbitration on this ground must be enjoined as
well.

The Global Slip mandates arbitration "if any dispute shall
arise" regarding "the interpretation of this Contract."  But, as
explained in their letters of December 29, 2014, and January 19,
2015, Underwriters seek to obtain "all documents" relating to
the interpretation of the Common Cause Coverage provision -- an
issue already definitively and finally decided by the Panel in
the First Arbitration.  As explained above, the FAA does not
permit the merits of the Award to be revisited in this fashion.[1]

---

[1] Because the Second Arbitration is enjoined, it is unnecessary
to separately order enforcement of the Award Judgment.

### III. Potential Declaratory Relief

Underwriters also reserve in their demand for a Second Arbitration a right to seek declaratory relief.  They do not, however, specify the declaration they may seek.  Even in their opposition to Arrowood's motion here, they do not make a firm choice in that regard.  Accordingly, it is not ripe to address that portion of Arrowood's motion for an injunction that addresses Underwriters' request for declaratory relief.  Suffice it to say that, to the extent that Underwriters might ask an arbitration panel in any further arbitration to revisit the construction of the Common Cause Coverage provision given by the Panel in the First Arbitration on the basis of Arrowood's alleged misconduct during that arbitration, such a request would permit Arrowood to once again seek an injunction from this Court pursuant to the FAA.

The FAA mandates judicial deference to arbitration awards to further the "twin goals of arbitration, namely settling disputes efficiently and avoiding long and expensive litigation."  Kolel, 729 F.3d at 103 (citation omitted).  To achieve these goals, and to ensure the finality of valid arbitral awards, the FAA prescribes a strict three-month limit

---

Moreover, Underwriters' demand for the Second Arbitration does not constitute the sort of conduct that would justify an order of contempt.  See, e.g., U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 789 F.3d 29, 33 (2d Cir. 2015).

on challenges to awards.  9 U.S.C. § 12.  Failing to meet that

limit binds the parties by the arbitrator's decisions.  As the

Supreme Court recently explained, a party who has agreed to

arbitration may not attack an arbitral award on the ground that

the arbitrator made an error, even a "grave error."  Sutter, 133

S. Ct. at 2070.  In rejecting an effort by Oxford to overturn an

arbitral award, the Court observed that

> Oxford chose arbitration, and it must now live with
> that choice. . . . The arbitrator did what the parties
> requested: He provided an interpretation of the
> contract resolving that disputed issue.  His
> interpretation went against Oxford, maybe mistakenly
> so.  But still, Oxford does not get to rerun the
> matter in a court.

Id. at 2071.

So it is with Underwriters.  That they attempt to challenge

the Award in a second arbitration and not in court makes no

difference.  Because allowing boundless relitigation would call

all arbitral awards into doubt and subvert the FAA, parties "may

not bypass [the FAA's] exclusive and comprehensive nature . . .

by attempting to arbitrate [their] claims in a separate second

arbitration proceeding."  Decker, 205 F.3d at 911.

Underwriters' attempt to do so here must therefore be rejected.

**CONCLUSION**

Arrowood's motion to enjoin the Second Arbitration is granted; its motions to enforce the judgment and to enter an order of contempt against Underwriters are denied. Underwriters' motion to compel arbitration is denied.

Dated:    New York, New York
          July 30, 2015

_____
          DENISE COTE
United States District Judge